This is the last day of this panel's sitting, but we do appreciate your adhering to our time limits nonetheless. When your yellow light comes on, you have two more minutes. When your red light comes on, we ask you to conclude your remarks unless you're answering a question from the court. We are familiar with the briefs and record excerpts, but we appreciate record citations when those are pertinent. And therefore, we call the first case of the morning, number 23-506-97, Virden v. City of Austin. And hear first from—I've spent quite a bit of time trying to figure out how to pronounce your name—Navar. I apologize, Your Honor. It's Navar. Navar. That's how we pronounce it. What nationality is that? Well, the pronunciation is disputed. It's a Czech name. Long story made short, my family were German-speaking Bohemians. They had a German-spelled name initially. They adopted the Czech spelling after they moved to Texas. So there are other Navars in Texas that say Niver, and frankly, that's incorrect. Niver and— But we say Navar because it was a, you know— Okay. Thank you. Okay. So, good morning, Your Honors. Jared Navar here for Jennifer Virden and William Clark. And there are a lot of issues that I want to be sure I have time to address the Court's questions. There are a lot of potentially interesting issues. I think most of them in this case are pretty clear-cut, but I'm going to just start by addressing what's at issue in our appeal of the District Court's order. And so first, you know, Virden challenges the District Court's refusal to acknowledge the new evidence that we submitted in May of 2023. The sole basis that the District Court refused to acknowledge it or consider it in its ruling was because it was submitted after discovery and after the summary judgment briefs were  But we believe that was clear error here because, and still important, because the nature of this case, this kind of evidence understandably may arise every time another election cycle is rolling around. You have additional candidates who are, you know, coming up, you know, out of the woodwork saying they might want to run for this or that seat or they will run. Did you say did Ms. Lovera run for City Council after all or not? She did not. Okay. But, and the standard here is abuse of discretion, it's not clear error. Well, right. The fact that, but the fact that Lovera may not have ultimately run for this seat, I think is completely irrelevant to the legal question. Because at the time that we submitted this evidence, my client said she wanted to contribute to this candidate whom she had just come to know about earlier that month. In other words, a number of days or at most a week and a half, two weeks before we filed this supplemental motion. At the time, Verdon had already filed her amended treasurer appointment. Let me just ask you, you know, that's all very clear cut and it's either abuse of discretion or it's not. But say you had not offered that evidence at the last minute, do you really think the judge would have done anything differently? In other words, I'm just wondering, you had asked for expedited consideration, then you graciously agreed to extend things by a couple of weeks, and then the judge without notifying anybody, right, cancels your hearing. I just wonder if anything, he'd have done anything differently if this had not been on the table also. Well, my view is, you know, having litigated this entire case is that we did everything humanly possible as the attorney in this case to try to get the court's attention. And I emphasize this in our briefs. We provided the district court multiple avenues of relief. If it did not want to accept the evidence as supplementary to the summary judgment motion at the time, that's the exact reason I filed a separate motion for a preliminary injunction. And when the judge continued to delay the hearing, I filed, you know, I reached out to the court coordinator and asked, are you going to have this trial? You know, we had a court date on the ten weeks after I filed this motion. And that was canceled. And the entire time I was waiting for a decision, I reached out to the court coordinator to ask, you know, what is the court's intention? And he essentially took away every avenue of relief and denied us even the ability to take an immediate appeal by refusing to deny the prospective claims for relief. You know, I had a reasonable expectation that at least the district court was going to maintain, we had an urgent need for relief and we had a trial date set for July 31st, ten weeks after we filed this motion. That was all canceled and then in August, after the canceled trial, the judge denies the motion by saying that it's moot. It was only moot at that point because, you know, he had refused to consider the new evidence. And our view is the district court, no less than this court, has an obligation, I believe, to consider new evidence that is dispertinent to justiciability of a case. In other words, it's no different than the very clear and well-followed rule in the circuit that . . . Were any fact issues . . . were these declarations, supplemental declarations, under penalty of perjury? They were. They were filed under the federal statute, 1746. Were there affidavits? They were verified affidavits. Okay. And were there any fact issues raised by those affidavits? Austin is free to dispute me if they dispute this. I don't believe, and I've said in the briefs, they ever pointed to a single fact in those declarations that they disputed, much less any fact that would be material to the relevance of this evidence. The only facts that are necessary to present this claim for the injunction that we requested was that Lovera wanted to solicit and accept campaign funds, and Verdin wanted to contribute to her. Austin has no reason to dispute that, and Verdin . . . it wasn't just the declaration that Verdin and Lovera signed that we filed. Lovera also filed her amended treasurer appointment with the City of Austin, which was publicly available. The court took judicial notice of that. If the court has questions about whether she was quote-unquote a candidate or not, I do want to address those. That's one of the points Austin raised. I think that question is irrelevant to the issue of the need for relief here, because Austin's argument is essentially, well, Lovera wasn't quite sure if she wanted to run or not. She said she was considering it. But the point is, she had a right, and she says in her declaration, one of the reasons she needs to fundraise early enough, more than a year before the election day, is because she needs to be able to gauge her level of support in the community. It's one thing for people to say . . . to click like on a Twitter post. It's another thing for somebody to put . . . you know, make an actual financial contribution to a campaign, and that's, you know, well understood by many candidates. That's why . . . Well, that's not a question of fact. That's for legal interpretation. Well, but nonetheless, this is one of the specific statements that Lovera made in her declaration that was before the court, and if . . . our position is, if the court . . . this is a fundamental right at issue, the right to pull money for political purposes in a campaign . . . Well, let me ask you a question though. Ms. Verdon and Mr. Clark got nominal damages. The city doesn't even challenge Clark's standing, for instance. Correct. So, you get nominal damages for two years ago, three years ago, whatever it is. Does this . . . why doesn't that mean that the law is unconstitutional, injunction or not? Well, because the court specifically declined to or denied prospective relief. Well, I know, but is the city going to enforce the law notwithstanding the damage award and presumably attorney's fees that go with the state finding that it's unconstitutional? Well, Your Honor, I think that question is definitively answered because they've now amended the law, and they've changed this . . . they've now expanded it to when, you know, you can fundraise any time since the end of the last election for that, whatever seat is at issue. And so, going back to an earlier point, for the same reason that this court rightly takes cognizance of the fact that Austin amended its law, which is fully within the city's control by the way, they can decide whether or not or when to amend the law. They decided to amend it and remove the challenge provision after this case was on appeal and already briefed. And, I'm not contesting the fact that this court should and has an obligation to take, you know, cognizance of that. My position is that the district court had at least as much duty to take . . . to acknowledge new facts on our side that also play into the justiciability of the claims. And my client had a fundamental First Amendment right that was being violated at the time, day by day, that she could not contribute to this new candidate who emerged in May 2023, and the district court's refusal to even consider that, especially under the circumstances and the schedule that's outlined in the briefing here, the way the district court handled it was really, I believe, respectfully, was egregious. When you have a continuing violation of a fundamental First Amendment right at issue here in this campaign finance context, and the nominal damages . . . So, at the time, obviously, let me address this point. We were requesting prospective relief and there was an urgent need for it, despite our best efforts, that was denied. And so, now we're asking for nominal damages for that second violation in 2023 to be recognized by the court. And that . . . and in the Uzbekbanum case, it's hard, I'm not sure how to pronounce it, but the recent 2021 Supreme Court case on nominal damages, I believe, squarely supports us. On this point, the Supreme Court definitively says nominal damages for a completed violation of a constitutional right are concrete, they're not symbolic. To me, that clearly means when Virden was prohibited in 2021 from soliciting and accepting from 2023 when she says, I want to give a contribution to another candidate, and she has a self-censor in another election cycle. So, just as a practical matter, what are you looking for? I mean, I take it your client's main purpose here is the law is unconstitutional. It's gone now, but it was unconstitutional at the time. Nominal damages, affirmance of the nominal damages, I would think, would codify that constitutional ruling. Or tell me if I'm missing something. That's correct. It's a distinct, concrete, not symbolic injury in 2023 as opposed to 2021, so the current judgment for nominal damages does not address that. The district court found it unconstitutional, awarded nominal damages. If we were hypothetically to affirm that, doesn't that take care of what your client's looking for? Well, no, Your Honor, because the issue, and if, again, this issue in 2023 was a discrete injury, by recognizing that, which I think Uswegbenim compels, the district court should amend the judgment to award a new nominal damages award for that separate injury. But what that does . . . I see. You want nominal damages for each event. Right. And the point of it, and this is not, again, it's not symbolic. This is not, you know, unnecessary. I'm not asking the court just to rule for us because we want a good judicial opinion on the issue of, you know, supplementation of the evidence in this context. I don't have to do that. I want to be very clear about that. I want . . . that will be a byproduct if you remand this for entry of nominal damages on the second injury, but the reason you should do it is because the Supreme Court has said this nominal damage is not symbolic. It's a concrete injury, and allowing the district court to . . . or requiring the district court to change what is now a very bad opinion in terms of supplementing evidence in the context of a, you know, time-sensitive First Amendment claim like this will be important precedent. But again, I'm not asking for . . . I'm going to interrupt you just because you're running short on time, and I need to follow up on this because what you're saying now may be in essence the same, but it's not really what you're saying in your brief. The closing page of your brief says that we reverse the judgment . . . we should reverse the judgment to the extent of denied prospective relief, hold that plaintiff's prospective claims remain justiciable, and direct the entry of a declaratory judgment against the new blackout. It doesn't mention nominal damages. It doesn't mention any of the other things that you just described, so the question which Judge Ho asked, and I'll ask again, what are you asking us to do? Okay, and thank you for that question, Judge Smith, and the answer lies in the sequence of events here on appeal because when I filed the original brief, the law was still in place, and so we still had a live claim for a declaratory judgment. After Austin's brief, they amended the law, extended the fundraising period, so in the original brief, I had noted the need for nominal damages. In the reply brief, after the code was amended, the prayer notes that we have always requested nominal damages for violations of our constitutional rights. That's in the complaint. We requested nominal damages in the opening brief after the code was amended. We acknowledge that the prospective claims, there's no impending need for a prospective relief and injunction, but nonetheless, my client is still entitled to nominal damages. My understanding is under the Federal Rules of Civil Procedure that . . . Any other relief to which you're entitled, you asked for that? Right. That would be granted even irrespective of a specific request, and there's a citation to that effect in the Supreme Court's Uswegbenim decision. Just because I know Austin has made a point of this, I want to address the issue of the completed violation of a legal right and why I believe that's satisfied here. The Supreme Court and this court have repeatedly recognized that a pre-enforcement self-censorship, when you're self-censoring, you don't have to break a law in order to challenge it in  The self-censorship itself is a cognizable injury for Article III purposes, and in Opulent Life Church, this court several years ago found that injury is recurring each day that the prohibition applies. All right. You have time for rebuttal. Thank you. Thank you. All righty. Mr. Hitch. May it please the Court. There are, as Mr. Navar mentioned, many issues in this case that the court could get to. There are two I want to focus on now, and one of them is a jurisdictional issue that, frankly, I had not noticed or hadn't crystallized until yesterday flying here, so it's not briefed. In fact, I'm going to wait to do that because it ties into the issue about the declarations that weren't admitted that was the main part of the argument from the other side. I'll call them the Lovera Declaration. She was the candidate, supposed candidate, that Ms. Virden wanted to contribute to. Mr. . . . on February 29th of this year, and we provided, Your Honors, a Rule 28J letter on this, the city repealed the 365-day fundraising rule and moved it, as Mr. Navar said, to running from the end of one election to another. You can raise funding any time. So that moots the issue that Judge Pittman decided in the Nominal Damages Award where he said . . . it moots the First Amendment issue. It doesn't . . . I'll come to the mootness issue of the Nominal Damages question second, but it moots the issue . . . The mayor may not moot injunctively. It moots the declaratory and injunctive relief. Okay, but the damages claim . . . That's part of the jurisdictional issue I have, which I'll come to, but what I wanted to say about that is that the mooting of that has been conceded, of the claim for equitable relief, declaratory and injunctive relief, has been conceded by Ms. Virden and Mr. Clark, although this Lovera Declaration only concerned Ms. Virden. It's been conceded that it's moot, and the court has said concessions . . . So that part of their case is moot. The court has said as recently . . . I'm guessing they conceded that they won. No, they conceded that it's moot. They said . . . They wanted the law gone. I thought so. But they conceded that their declaratory and injunctive relief claims are moot. They didn't concede that, hey, the First Amendment issue is completely gone. They didn't concede that, but they did concede that the declaratory and injunctive relief claims are moot. They did it in this motion for clarification issue, and they did it in their brief itself, in their responsive brief, their second brief here. That is binding on them. So that issue, declaratory and injunctive relief, is out the window. That's all that leaves is the issue of nominal damages. The Lovera Declarations were only offered with respect to declaratory and injunctive relief. They were specific as to this. They never said a word in the district court about nominal damages with respect to these two declarations that they wanted offered. Why does that matter? It's all springing from the same central theory, which is that this law is unconstitutional. It matters because the Lovera Declaration issue is gone. It's mooted by the mooting of the declaratory and injunctive relief. You don't think it supports settlement to different kinds of relief? No, I'm just saying that they only offered that evidence with respect to declaratory and injunctive relief. So the issue that they're raising is gone because that issue, the Lovera Declaration issue is gone. But she wasn't a plaintiff. She was not a plaintiff. No, but Lovera and Verden declarations are gone. Well, I'd have to think about that. But they said this is offered for mootness only. They said that. They said it only goes to justiciability. I understand exactly what you're saying, but whether eventually mooting out one kind of relief moots out nominal damages associated with the violation in 2023, that's another matter. That was not my point about that. It's that the Lovera and Verden declarations that were belatedly offered have nothing to do with nominal damages. I understand exactly what you're saying. Okay. Okay. Thank you. But I need to look at the documents. So now I come to the nominal . . . Judge Jones may understand. I'm not sure I do. Are you essentially making a forfeiture argument that this . . . Yes. I mean, they clearly . . . Your argument is . . . They now . . . I'm sorry. Maybe today, in theory, if they had to do it all over again, they could assert it for in support of nominal damages. Your point is they never did that in the district court. They only offered it for one purpose. And therefore, it's forfeited. I'm not saying I agree or disagree. Yes. That's your argument. It's a forfeiture argument.  Okay. Yes. And on top of that, they also stipulated to $1 in nominal damages for Ms. Verden, $1 in nominal damages for Mr. Clark. So that . . . They've stipulated the amount of nominal damages already. So there's nothing to send back on nominal damages with respect to that. Okay. Now I'll turn to what I consider the much bigger issue here. And that is . . . And I listened online to how to pronounce this, and I still don't have it down, but the Uzugbunum case from 2021. And it . . . I've been wrestling with the issue of how do you put together facial challenge, which is what this is, completed injury, which is what they're claiming, and the issue of nominal damages. Nominal damages is all that's left of their case. That's what keeps their case alive. The rest of their case is moot. Okay. And this all happened while we were up on appeal. Okay. It . . . What came to me is I went back to reread the Uzugbunum case. And that Uzugbunum case says only that it's an as-applied case in which the challenge . . . The First Amendment-challenged governmental action had been . . . They had enforced it against the plaintiff, Mr. Uzugbunum. It was a past-completed injury. And the court specifically says that it requires a past-completed violation. And at page 802 of the Supreme Court Reporter part of the opinion, it says, Mr. Uzugbunum experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. That's when it happened. The speech policies or the speech issue here has never been enforced against Ms. Verden or Mr. Clark. Never. That's the reason they brought this as a facial challenge and they have insisted all along it's a facial challenge. Uzugbunum does not say nominal damages claims keep a otherwise moot case alive when there is a facial challenge. And I don't think it would have. Nominal damages barely keep an as-applied case alive. And one reason you can tell that this is so, in addition to the plain words, which says they have to have a past-completed violation, and that happens when there's been enforcement action against the plaintiff. One of the reasons you can tell that's so is a little attenuated, but I want to explain it. Justice Thomas authored that opinion, Uzugbunum. Justice Thomas is not a believer, and most of the court is not a believer, in giving open season, so to speak, to facial challenges, to facial constitutional challenges. He, in fact, in the Net Choice case, wrote- I'm not sure that has any respect to the nominal damages mootness claim. It does because the nominal damages- We have to take as a given the clause it is, not what the Supreme Court may do in the future. No, but the court has never said that nominal damages keep a case alive when there's a facial challenge. It has never said that. But assuming the validity of a facial challenge, why would the results of the mootness analysis be different? We can dispute whether facial challenges should exist or not, but assuming they exist, if we have to, why does that alter the mootness analysis? Because Uzugbunum- You're really just saying facial challenges shouldn't exist at all. That's not- I'm not saying that, Your Honor. Sorry. There has never- there's a Third Circuit case- I can look up the case- that said it has never found a case where nominal damages have been awarded for the mere passage of a statute or ordinance. Okay? This is a facial challenge to the passage of the ordinance. Is this a juristic- This is the jurisdictional argument. Well, now, wait a minute. Okay. You certainly didn't argue it in your briefing. I didn't. I agree. I agree. But it's a jurisdictional argument because- Well, we haven't had a chance to respond. I don't disagree with that. I only- I'm not trying to do it to surprise. It surprised me when it crystallized for me yesterday. It's not- Well, a lot of people have crystallized their thinking in the wake of the hangman's noose, so to speak. Well, I wasn't thinking of the hangman's noose when I was flying here yesterday, frankly, Your Honor. Well, I do all the time. But my point, I think it mainly goes to the question Judge Ho was asking. Buzig Boonum only says nominal damages keep a case alive when there is an as-applied challenge and the action has been enforced, okay, against the person. And it says, the last footnote, which is an asterisk, says they couldn't decide it as to Mr. Bradford, who was the other plaintiff there, because they couldn't tell if there had been a past completed action. So Buzig Boonum does not determine that- let's say it this way. Buzig Boonum does not determine that their nominal damage claim in their facial challenge keeps their case alive, otherwise- Is there anything in the opinion that you can cite to, to suggest that the Are you just simply stating- I'm stating an argument that a nominal damages claim in a facial challenge, if they're available at all, do not keep an otherwise moot case alive. And Buzig Boonum does not hold it does. There is no case that has addressed this issue specifically. But it is a jurisdictional issue that is very important here. And one reason I think there's a big difference, just when your honors go back to analyze this, Section 1983 is a tort-based, kind of the analog for a tort-based claim about civil rights. Buzig Boonum talks about nominal damages being grounded in a tradition of tort damages, right? Tort claims and common law of tort damages. That's the reason it said those keep an otherwise moot case alive. Facial challenges are not, are not grounded in the common law. Facial challenges are a relatively modern day creation. Let me ask you, I mean, do you have more to say about that? I have a serious question. I have more to say, but it's really would be a supplemental brief. And your honors know whether you want one or not. Well, I have the major has Buckley v. Valeo in Wisconsin and v. FEC in United, Citizens United, and say nothing of Susan B. Anthony. Weren't all those challenges facial challenges? They were, but they weren't nominal damages cases. Well, I understand that, but I don't, I really don't. What's really at issue here is attorney's fees, right? I'm sorry, what's really at issue? I say what is really at issue here is attorney's fees. No nominal damages, no attorney's fees. Well, they haven't been put in issue yet. No, but the . . . They've waived any claims for fees as to what's happened so far. They've waived claims? They've waived them because they didn't raise them. And in 2020, in a decision Judge Ho, the panel was on, said, in a similar situation, the very same set of attorneys actually said, they'd never made their claim under the local rules in time. So they're waived as to that. Okay. I don't know what they're going to do for the future. So why are we arguing about nominal damages or not nominal damages? Because there are two reasons. One is they undoubtedly, especially now, will make an attorney's fees claim for the time forward, which this court said they can do in 2020. They will undoubtedly do that. But the more important issue is this matter of nominal damages and facial claims is very important to local government actors, to the state itself actually, because there has to be an end to cases. And if there is a way to keep facial . . . If you can raise a facial claim that is otherwise moot and just throw in a claim for nominal damages . . . It's not otherwise moot. It is moot because they won and the state and the city had to change its law. Well, it's moot. That's the point. The rest of their case is moot. There's no question about that. They've conceded it. So that only leaves to keep the case alive, nominal damages. And it is important for cities, this particular city in particular, to know, wait a second, we passed an ordinance. It's been around for a long time. There's not a good claim anymore for this particular plaintiff or whatever for injunctive or declaratory relief, but can they just throw in a facial challenge and throw in nominal damages as a claim? And that is very important to know whether that can be done. And I don't think Uzi . . . I know Uzi Gbunim doesn't support that. Well, it doesn't rule on it one way or another is what you're saying. It does not. It does not. But the rationale of it undermines it, especially when combined with the Supreme Court's really looking askance at facial challenges. Well, this is a very interesting argument, and if the panel thinks it's important, we will ask both sides for additional briefing. Thank you. Because, you know, what you have as an epiphany may or may not be right, so we'll just have to . . . It wasn't on the way to Damascus. It was on the way to New Orleans. There you go. So, also, Your Honors, I want to . . . I'm sorry. I stepped aside from this. I want to address the limitations issue, which is a very important issue that goes beyond just the details of this case, too. We have argued that the limitations period had run by the time Ms. Virden . . . I'll leave Mr. Clark out of it because if Ms. Virden was too late, Mr. Clark clearly was too late. So, by the time Ms. Virden filed her facial challenge to the 2017 ordinance, it was three and a half years after the ordinance had passed, and we say the two-year limitations period began running at the time that statute became effective, that ordinance became effective. Judge Pitman rejected that argument, and we think he was wrong, and we briefed that extensively in our brief, but there was a decision. Again, Rule 28J letter submitted to Your Honors shortly after July 1st because the decision came out on July 1st. The Supreme Court decided the corner post case. That was an administrative law case about the Administrative Procedure Act, facial challenges. Does the limitation period run before an entity even exists? In that case, the entity, corner post, started doing business in 2018. The challenge regulation was passed and adopted in 2011, and the Supreme Court said it can't start before that entity existed. In the course of that, there was a page 17 of the corner post decision. Again, I couldn't brief it because it's too long. I mentioned the situation to Your Honors. On page 17, the majority opinion goes to Great Plains to distinguish a 1926 U.S. Supreme Court decision called Koons, K-O-O-N-S, which I never heard of, frankly, Your Honors. I've now read it, and Koons supports our position that the limitations period had run and curious why. This is not briefed either because there wasn't room in the 28J letter to do it. In Koons, it was a Federal Employer's Liability Act case. I believe it was a unanimous decision. In Koons, it was a personal injury case. That's unlike corner post, which is an Administrative Procedure Act case and governed by the statute that sets the limitations period there. It was a personal injury case. Then once again, Section 1983 cases are analogous to personal injury cases. That's where the limitations period is borrowed from Texas is the personal injury thing. You're running out of time, and I do need to ask a question. I understand. I assume you concede that the district court found the blackout period unconstitutional. I'm sorry. I just didn't hear the end.  I assume you concede that the district court found the blackout period unconstitutional. The what? I'm sorry. I just didn't hear what you said. I'm sorry. That the district court found the blackout period to be unconstitutional. Oh, yes. Yes. Okay. So as I read Uzubugnum, however you pronounce it, we hold that for purposes of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right. Why does that principle not apply here? Because the court found it is a violation of a constitutional right. Because the very next paragraph or sentence just further down in Uzubugnum, which is where that is, said this about when the completed violation was. It said Mr. Uzubugnum, who was the only one as to whom the nominal damages claim was held to keep the case alive. There was a reservation about the other one. It said he experienced a completed violation of his constitutional rights, quote, when respondents enforced the speech policies against him. And how is that not true? That is not here. Say it again. There was no desire by the city of Austin to enforce against Verdon and Clark? I don't know about their desire, but they never have. They've conceded it's never been enforced. Well, the whole point of this is a facial challenge is that in the First Amendment context and what irrespective of Justice Thomas' views is that there is a chilling effect, which is an injury. I understand, Your Honors, but that is an injury. Injury is by definition. That is an injury for purposes of standing. That's not an injury, a causational injury. So your point is what's different about this case from Usseg-Boonham is the city of Austin didn't formally bring charges against Verdon and Clark. Well, I guess they're two sides of the same coin. But that's your point then. The law can be on the books and chill, and that's okay under the law. But that all goes to the injunctive and declaratory relief issue, which they concede is new. No, no. It's going to your reading of Usseg-Boonham. I'm just trying to understand. I think you have it correct. Usseg-Boonham was an as-applied challenge, and the court said for as-applied challenges, when there's been enforcement against somebody, a nominal damages claim can keep the case alive. Well, unless Judge Ho insists. I mean, this is all completely novel to the court, these few moments. So, why don't you sit down. We'll let him try to respond, and if the court thinks it important, we will ask for supplemental briefing. Thank you. And I understood the novelty. Yeah. No, I understand that. And, you know, don't know whether you're right or not, but I think just speculating on an oral argument is not going to get us very far. Okay. So, a quick rebuttal, Your Honors. First, on the issue of a completed violation of a legal right, I think Judge Jones' intuition is exactly what our argument is, that we can't show enforcement against Verdant or Clark because they self-censored, and that is an Article III injury. The city can't enforce it against them because they're withholding their otherwise protected First Amendment activities, and they filed a lawsuit to challenge that. But every day that that self-censorship continued, because of this law that clearly and directly regulates them as actors in the political scene, they could not undertake the activity they otherwise would have. But, I mean, let me clarify. You haven't looked at Usabugnam in connection with this new issue, right? Well, I can address . . . I did read it closely, you know, again, before this argument. You will. And I can address . . . I mean, I'm not quite clear on what counsel's argument is through the whole, you know, argument he made about the new jurisdictional issues. If the court is interested in those, I would ask for a chance to, you know, respond to those fully. But as to . . . So, again, the distinction here, you know, Usabugnam was an as-applied case. But, Your Honors, I think, you know, or I agree with the position that that is not a relevant distinction in terms of the injury. It doesn't show that there was not an injury here. And counsel, I think, for the city is conflating the standard of reviewing the merits of a facial challenge versus the issue of standing. In every facial challenge, the plaintiff still has to establish injury in fact in all the requirements of Article III. And Verden here is not somebody who is saying, oh, I don't know if I'll ever be a candidate, but just in case I might, I want to challenge this law as violative of the First Amendment. She was a candidate. She was a prospective contributor. And she suffered particularized injury in fact. Well, they're not arguing about the earlier event. They're arguing about Lovera 23. Correct. And just to . . . So, I'll address that first just to complete my thought on Mr. Bradford and the Usabugnam case. The court did reserve judgment as to that. But I want to point out a really important distinction because that argument doesn't prove what the city thinks. If you read that footnote at the end of Usabugnam, Mr. Bradford, the court says that he declined to speak. There were two issues in Usabugnam. First, the first plaintiff, Usabugnam, was distributing religious literature. And that was prohibited, as I understand the opinion, by a direct prohibition saying you can't distribute religious literature on the campus. So, first he got dissuaded from that, and then he got a permit, and he went to speak. And the reason that the second enforcement against his speech activity transpired was because the officers were receiving complaints. The standard, apparently, at the college said that if your speech is disruptive or upsetting to people, essentially, you can be prohibited from speaking. And there were complaints against the first plaintiff, and therefore he was prohibited from speaking. The opinion in that footnote says merely that Mr. Bradford, essentially, he self-censored from speaking, but it wasn't clear at all. It's not like this case at all, where Austin's law that we challenged clearly and directly prohibits the activity my clients wanted to undertake. There was no need for interpretation. There was no need for any complaints to be filed. So, in other words, we have, obviously, clear self-censorship. It wasn't clear that Mr. Bradford would have engaged in speech that would have incurred any kind of complaint. Also, just drawing out that idea more on the completed violation of a legal right as relevant here, again, the self-censorship is a completed injury. It's a completed injury every day that it continues. The fact that—and this is a really important point. It's important whichever way it goes. It's really important, I would submit, because you cannot hold that a self-censorship plaintiff's injury is not a completed violation of a legal right just because the government has not finished violating that plaintiff yet. In other words, every day that continues, there's no enforcement because she's doing what the law allows her to do, which is to self-censor and seek redress in the courts, but it's still an Article III injury. Corner post, last point, clearly supports our argument discussing the history of the accrual rule, which is plaintiff-centric. This is not a statute of repose. It's a statute of limitations. And my time is up. Thank you. Okay. Thank you very much. We have the case.